Filed 2/28/24  P. v. Mello CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C095740 |
| v. | (Super. Ct. No. 19FE016085) |
| FARON JOHN MELLO, | |
| Defendant and Appellant. | |

A jury convicted defendant Faron John Mello of first degree murder and being a felon in possession of a firearm.  The jury also found true firearm use enhancement allegations.  (Pen. Code, § 12022.53, subds. (b), (c), (d).)[1]  The trial court sentenced defendant to 25 years to life in state prison on the murder count and a consecutive 25 years to life on the section 12022.53, subdivision (d) finding.  It imposed a two-year prison term on the firearm possession count but stayed execution of that sentence under section 654.

---

[1]  Undesignated statutory references are to the Penal Code.

1

Defendant now contends (1) it was error to admit the victim's purported dying declaration; (2) the trial court was unaware of its discretion to impose a lesser enhancement under section 12022.53, subdivisions (b) or (c); (3) the trial court should have designated whether the term imposed and stayed on the firearm possession count was consecutive or concurrent, and the abstract of judgment must be corrected as to that count to reflect the oral pronouncement of sentence; and (4) he is entitled to an additional 85 days of presentence credit.

We conclude (1) it was not error to admit testimony describing the victim's dying declaration, (2) defendant has not established that the trial court was unaware of its sentencing discretion, (3) although the trial court properly imposed the stayed sentence, the abstract of judgment must be corrected to reflect the oral pronouncement of sentence, and (4) defendant is entitled to an additional 85 days of custody credits.

We will modify the judgment to award defendant an additional 85 days of presentence credit, for a total of 894 days, under section 2900.5, and we will affirm the judgment as modified. We will direct the trial court to amend and correct the abstract of judgment to reflect the judgment as modified, including the two-year prison term imposed and stayed on the count two firearm possession conviction.

BACKGROUND

Kenny Evans, C.L., G.C. and others were involved in a hand-to-hand fight on September 7, 2019. Someone shot Evans in the chest, and he died the next day.

Evans dated C.L. on and off for 13 years. C.L. had a sexual relationship with defendant when Evans was in prison but ended that relationship before Evans was released and she stopped communicating with defendant. Within a week before the September 7 shooting, defendant posted a video on Facebook referencing Evans and C.L. Defendant posted that he had a gun and was coming for them. Defendant made comments that a law enforcement officer described as a threat to shoot someone.

2

About an hour before the shooting, defendant recorded another video in which he said he was on his way to kill Evans.

Surveillance videos from businesses at the location of the shooting were played at the trial. The videos captured the fight in the parking lot and the reaction of the crowd to the shooting, but they did not capture the shooting itself. C.L. identified an individual in surveillance videos as defendant; the individual was wearing a red sweatshirt, black pants, and a grey head covering. At the trial, she said defendant wore the same sweatshirt before the shooting.

A surveillance video showed defendant with a shiny silver object in his hand. A criminal investigator opined that, based on the way defendant carried the object and the reaction of those around him, the object was a handgun. After the shooting, surveillance video showed defendant running toward the street and Evans running in the opposite direction, leaving a trail of blood.

Cell phone records showed defendant's cell phone was in the area of the shooting at the time of the shooting.

C.L. called 911 at 11:55 p.m. on September 7, 2019. She said someone had been shot and they were on the way to the hospital. C.L. told the 911 operator she did not know the identity of the shooter. But at trial, C.L. testified that on the way to the hospital, Evans said defendant shot him. According to C.L., Evans also said, "I'm going to die. I love you guys."

C.L. testified she did not tell the 911 operator Evans had identified defendant as his shooter because she did not know what Evans wanted her to do and whether Evans was going to live or die. C.L. explained there was a culture of not snitching. She admitted she did not initially tell law enforcement officers that Evans identified his shooter. She thought the shooting was captured on video, she did not want to get involved, and she was afraid. According to C.L., she subsequently told a law enforcement officer that Evans identified defendant as the shooter. And later, after

3

agonizing over what to do, she wrote a letter informing the prosecutor about Evans's statement.

Defendant called as a witness the police officer who took C.L.'s statement. The officer said C.L. did not report that Evans identified his shooter.

G.C. also testified at trial. She described threats defendant made against C.L. and Evans before the shooting. G.C. disclosed for the first time at trial that on the way to the hospital, Evans identified defendant as his shooter. G.C. said she did not tell law enforcement officers about Evans's statement because C.L. asked her not to get involved and G.C. wanted to protect herself and her family. G.C. identified defendant as the person in a surveillance video wearing a red sweatshirt and grey head covering.

The jury convicted defendant of first degree murder (§ 187, subd. (a) - count one) and being a felon in possession of a firearm (§ 29800, subd. (a)(1) - count two). On count one, the jury found true the allegations under section 12022.53, subdivisions (b), (c) and (d) that defendant personally used a firearm, personally and intentionally discharged a firearm, and personally and intentionally discharged a firearm causing death.

The trial court sentenced defendant to 25 years to life in state prison on count one. It denied defendant's motion to strike the section 12022.53, subdivision (d) firearm use enhancement allegation and imposed on that enhancement a consecutive prison term of 25 to years to life. It imposed a two-year prison term on the count two firearm possession conviction, but stayed execution of that sentence under section 654.

DISCUSSION

I

Defendant contends that admission of C.L. and G.C.'s testimony about Evans's statement to them under the dying declaration exception to the hearsay rule violated defendant's rights under the Confrontation Clause because C.L. and G.C.'s testimony was unreliable. The People respond that the holding in *People v. Monterroso* (2004)

4

34 Cal.4th 743 (*Monterroso*) requires us to reject defendant's Confrontation Clause claim and it was up to the jury to determine C.L. and G.C.'s credibility.

Evidence of an out-of-court statement offered to prove the truth of the matter stated is hearsay and is generally inadmissible. (Evid. Code, § 1200.) However, Evidence Code section 1242 provides an exception to the hearsay rule for a statement made by a dying person about the cause and circumstances of his or her death if the statement was made upon personal knowledge and under a sense of immediately impending death. The rationale for the exception is that a person facing death " 'is induced by the most powerful considerations to speak the truth . . . ' " and for that reason a dying declaration is sufficiently trustworthy for admission. (*People v. Smith* (1989) 214 Cal.App.3d 904, 911; accord *People v. Johnson* (2015) 61 Cal.4th 734, 763 (*Johnson*).)

Defendant challenges the veracity of C.L. and G.C. He says the trial court abused its discretion in concluding that C.L. and G.C.'s credibility was for the jury to decide. But the *admissibility* of the hearsay statement under Evidence Code section 1242 does not hinge upon the credibility of the witness relating the statement of the dying person. (Evid. Code, § 1242; see *People v. Riccardi* (2012) 54 Cal.4th 758, 833, overruled on another ground in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216; *Monterroso, supra*, 34 Cal.4th at p. 763; *People v. Spencer* (1969) 71 Cal.2d 933, 946.) Whether C.L. and G.C.'s testimony about Evans's statement was unreliable went to the weight of the evidence, not its admissibility. (*People v. Brown* (2014) 59 Cal.4th 86, 104.) Except in instances of physical impossibility or demonstrable falsity, which defendant has not established here, C.L. and G.C.'s credibility was properly left for the jury to assess. (*Id.* at p. 105; *People v. Allen* (1985) 165 Cal.App.3d 616, 623-625.) C.L. and G.C. testified at the trial and the jury was able to evaluate their credibility.

With regard to the Confrontation Clause claim, the California Supreme Court held in *Monterroso* that admission of a dying declaration under Evidence Code section 1242

5

does not violate the Confrontation Clause. (*Monterroso, supra*, 34 Cal.4th at pp. 763-765.) It affirmed that holding in *Johnson, supra*, 61 Cal.4th 734 and *People v. D'Arcy* (2010) 48 Cal.4th 257. (*Johnson*, at pp. 760-762 & fn. 9; *D'Arcy,* at pp. 289-292.) We will follow those decisions. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

In light of our conclusion, we need not decide whether Evans's dying declaration was testimonial for purposes of the Confrontation Clause. (*People v. Mayo* (2006) 140 Cal.App.4th 535, 555, fn. 18.)

II

Defendant next contends he must be resentenced because the trial court was unaware of its discretion to impose sentence under section 12022.53, subdivisions (b) or (c) rather than section 12022.53, subdivision (d).

A

Section 12022.53 authorizes various sentence enhancements for the use of a firearm in the commission of murder. (§ 12022.53, subds. (a)(1), (b)-(d).) Subdivision (d) provides for a prison term of 25 years to life for the personal and intentional discharge of a firearm causing the death of a person other than an accomplice. (§ 12022.53, subds. (a)(1), (d).) Whereas subdivision (c) provides for a prison term of 20 years for the personal and intentional discharge of a firearm (§ 12022.53, subds. (a)(1), (c)), and subdivision (b) provides for a prison term of 10 years for the personal use of a firearm (§ 12022.53, subds. (a)(1), (b)). Nevertheless, a trial court may, in the interests of justice and pursuant to section 1385, strike an enhancement otherwise required to be imposed under section 12022.53. (§ 12022.53, subd. (h).) Prior to defendant's sentencing, the California Supreme Court resolved a split among the courts of appeal, holding that a trial court exercising its discretion to strike a section 12022.53, subdivision (d) enhancement may impose a lesser enhancement under section 12022.53, subdivision (b) or (c). (*People v. Tirado* (2022) 12 Cal.5th 688, 692, 696, 700 (*Tirado*).)

Citing Senate Bill No. 81 (2021-2022 Reg. Sess.), defendant asked the trial court to exercise its discretion and not impose a sentence for the section 12022.53 findings.[2] Defense counsel argued that Evans, C.L., and their friends bore responsibility for the shooting. Defendant did not ask the trial court to impose a lesser enhancement under section 12022.53, subdivision (b) or (c) rather than a subdivision (d) enhancement, nor did he cite *Tirado* or *People v. Morrison* (2019) 34 Cal.App.5th 217, the decision referenced favorably in *Tirado*. (*Tirado, supra*, 12 Cal.5th at pp. 696-697.) The People countered that based on defendant's record and conduct in this case, the trial court should give defendant more prison time.

The trial court acknowledged that a change in the law gave it discretion to strike the section 12022.53, subdivision (d) enhancement in the interests of justice, but the trial court said it was convinced it was most appropriate to impose the subdivision (d) enhancement based on defendant's conduct in this case and his prior record, lack of remorse, and attempt to blame the victim. The trial court said that having heard the evidence at trial, Evans was without fault and defendant initiated the hostility between the parties. Accordingly, the trial court denied the request to strike the section 12022.53, subdivision (d) allegation and imposed a consecutive prison term of 25 to years to life under section 12022.53, subdivision (d).

B

A defendant is entitled to sentencing decisions made by a court exercising informed discretion, and a trial court abuses its discretion when it acts while unaware of the scope of its discretion. (*Tirado, supra*, 12 Cal.5th at p. 694.) But we do not infer an

---

[2] Effective January 1, 2022, Senate Bill No. 81 amended section 1385 to add subdivision (c) which provides, "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute."

7

abuse of discretion from a silent record.  (*People v. Czirban* (2021) 67 Cal.App.5th 1073, 1097; *People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.)  The trial court was presumably aware of the California Supreme Court's decision in *Tirado*, decided four weeks before the sentencing hearing.  (See *People v. Mosley* (1997) 53 Cal.App.4th 489, 496 ["The general rule is that a trial court is presumed to have been aware of and followed the applicable law."]; cf. *People v. Jeffers* (1987) 43 Cal.3d 984, 1000 [presumption that a trial court has followed established law does not apply where the law in question was unclear or uncertain when the lower court acted].)  On a silent record, we presume the trial court made the necessary findings in imposing a sentence.  (*People v. Martinez* (1998) 65 Cal.App.4th 1511, 1517-1518; see *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [" 'A judgment or order of the lower court is presumed correct.  All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' "  Italics omitted.].)

Defendant has not established that the trial court was unaware of its sentencing discretion.  Accordingly, his contention lacks merit.

III

Defendant further argues that the trial court erred in not deciding whether the prison term imposed and stayed on the count two firearm possession conviction was consecutive to, or concurrent with, the indeterminate term imposed on the count one murder conviction.  He also claims the abstract of judgment must be corrected to reflect the two-year prison term orally imposed on count two.

The People respond that because the trial court stayed execution of the sentence on count two under section 654, any designation of the sentence as concurrent or consecutive would have been improper.  But the People agree the abstract of judgment should be corrected.

Section 654 prohibits multiple punishment where the same act or omission or " 'a course of conduct deemed to be indivisible in time' " results in multiple statutory

8

violations. (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) A trial court must determine whether to stay execution of a sentence under section 654, thereby avoiding multiple punishment, before deciding whether to impose concurrent or consecutive sentences. (Cal. Rules of Court, rule 4.424.) If it decides to stay a sentence, it must impose and stay execution of the sentence on that count with no determination made as to whether it is consecutive or concurrent. (*People v. Cantrell* (2009) 175 Cal.App.4th 1161, 1164; see *People v. Bruner* (1995) 9 Cal.4th 1178, 1182, fn. 3.) If the count for which sentence is not stayed is reversed or otherwise undone, imposition of sentence on the stayed count is preserved. (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1468; *Cantrell*, at p. 1164.) Here, imposition of a consecutive or concurrent sentence on the count subject to section 654 would be meaningless because if count one (the count for which the sentence is not stayed) were to be reversed, there would be no term upon which count two would run. The trial court did not err.

Citing section 669, defendant argues that because the trial court did not impose a consecutive sentence on count two, the term on that count must run concurrently. However, section 669 applies when a "sentence is ordered to be executed." (§ 669, subd. (a).) Section 669 does not apply because the sentence on count two was stayed and was not ordered to be executed. But the People properly agree that the abstract of judgment must be corrected to reflect that the trial court imposed a two-year prison term on count two and stayed execution of that sentence. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

IV

Furthermore, defendant contends he is entitled to 894 days of actual custody credit but was awarded only 809 days. The People agree.

In all felony convictions, when a defendant has been in custody, all days of custody must be credited upon the defendant's term of imprisonment. (§ 2900.5, subd. (a).) The defendant is entitled to custody credit beginning on the day of arrest and

9

continuing through the day of sentencing. (*People v. Bravo* (1990) 219 Cal.App.3d 729, 735.) A partial day is treated as a whole day. (*Ibid.*)

The record shows that defendant was arrested on September 8, 2019. The period from September 8, 2019 to February 17, 2022 (the date of the sentencing hearing) is 894 days. The trial court awarded defendant 809 days of actual credit under section 2900.5. Defendant is entitled to an additional 85 days of custody credit. We will modify the judgment to award defendant an additional 85 days of presentence credit, for a total of 894 days, under section 2900.5, and we will affirm the judgment as modified.

## DISPOSITION

The judgment is modified to award defendant an additional 85 days of custody credit, for a total of 894 days, under section 2900.5. The judgment is affirmed as modified. The trial court is directed to amend and correct the abstract of judgment to reflect the judgment as modified, including the two-year prison term imposed and stayed on the count two firearm possession conviction. The trial court shall forward a copy of the amended and corrected abstract of judgment to the Department of Corrections and Rehabilitation.

                                 /S/
                           MAURO, J.

We concur:

    /S/
HULL, Acting P. J.

    /S/
KRAUSE, J.