Filed 3/18/25  P. v. Rocha CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARTIN LUIS ROCHA,<br><br>    Defendant and Appellant. | E083114<br><br>(Super.Ct.No. FSB23002134)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Gregory S. Tavill, Judge.  Affirmed.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and James Spradley, Deputy Attorneys General, for Plaintiff and Respondent.

1

Martin Luis Rocha appeals after a jury convicted him of driving under the influence (DUI) of alcohol and driving with a blood alcohol content of 0.08 percent or higher.  (Veh. Code, § 23152, subds. (a)-(b).)  Rocha argues that the trial court violated his Sixth Amendment right of confrontation by admitting evidence of an out-of-court statement that Rocha was in the driver's seat of his car.  We conclude that there was no confrontation clause violation, and we accordingly affirm.

BACKGROUND

Rocha's convictions arise from two incidents in March 2023.  The first incident occurred on March 11 in Twin Peaks, California, where there was roughly eight feet of snow on the ground.  At around noon, Madelynn Horan and her mother were out in the snow trying to jump-start Horan's car using her mother's Subaru.  Rocha was driving a truck and hit the back of the Subaru.  He said something to Horan's mother and drove away.  Roughly 30 minutes later, a San Bernardino County sheriff's deputy, Jesse Snow, drove by Horan and her mother while the deputy was patrolling.  Snow spoke to the two women and checked the area for Rocha's truck, which Snow found approximately one-quarter to one-half mile away.  Rocha and another man were standing near the front of the truck.  A tow strap or chain connected the front of the truck to a small tractor that was stuck in the mud.  As Snow talked to Rocha's companion, Rocha used the truck to try to pull the tractor out of the mud.  He drove the truck in reverse and then forward several times.  Snow eventually spoke to Rocha, who gave Snow reason to believe that a DUI investigation was warranted.  Another officer used a preliminary alcohol screening device

2

to test Rocha's breath at 1:53 p.m. and 1:55 p.m. Those tests estimated Rocha's blood alcohol content to be 0.291 percent and 0.285 percent, respectively. Rocha submitted to a blood draw at 3:30 p.m., and the blood test showed that his blood alcohol was 0.240 percent.

The second incident occurred on March 13 in Crestline, California. Christian Guerrero was helping people during a snow storm as a volunteer with the San Bernardino County Fire Department. Guerrero saw an unconscious man in a car and a line of cars behind him on the road. The unconscious man was in the passenger seat and alone in the car. Guerrero made contact with the man to ensure that the man was alive; he shook the man and got a response, so Guerrero continued with his work. Guerrero spoke to an officer that day about the incident and again the next day.

At trial, Guerrero's memory of the incident was "very minimal." He testified: "From what I remember, making contact with the gentleman while he was in the passenger seat. Okay? And it's not like I could remember everything. I'm not saying that I didn't see him in the driver's seat or I didn't make contact with him there, I just don't remember." Guerrero did not recall telling an officer that he saw Rocha in the driver's seat, but he could have said that to the officer.

Snow was dispatched to the scene on March 13 and saw an Audi stopped in the road. He recognized the man in the Audi as Rocha; he remembered Rocha from their encounter two days earlier. Rocha was in the passenger seat and appeared to be asleep or passed out. Snow spoke to a firefighter who was also there and then initiated a DUI

investigation. Snow asked the firefighter "to get somebody to come back that had witnessed [Rocha] driving." Snow was able to rouse Rocha briefly. Rocha smelled strongly of alcohol. Snow had to carry Rocha from the Audi to the patrol car. A California Highway Patrol officer, John Gomez, arrived and took over the investigation at roughly 3:30 p.m.

Gomez asked Rocha if he was driving, and Rocha said, "no." Gomez asked who was driving, and Rocha again responded, "no." Rocha needed assistance to stand, his speech was heavily slurred, and his eyes were red and watery. Rocha was the registered owner of the Audi, and the keys were on scene. Gomez arrested Rocha and obtained a blood draw warrant. Rocha's blood was drawn at 6:27 p.m. The blood test showed that his blood alcohol content was 0.355 percent.

Defense counsel cross-examined Gomez concerning the warrant application. Gomez testified that he checked a box on his affidavit indicating that there was a witness placing Rocha behind the wheel of the Audi. The witness was Guerrero, but Gomez submitted that affidavit before he spoke to Guerrero. He spoke to Guerrero on March 14, one day after the blood draw.

On redirect examination, the prosecutor asked Gomez if his phone call with Guerrero confirmed what he "already believed to be true." Defense counsel objected on relevance and vagueness grounds. The court did not rule on the record and held an unreported, five-minute sidebar conference.

The redirect examination then resumed, and Gomez confirmed that he spoke to Guerrero after he submitted the affidavit and obtained the warrant. The prosecutor asked: "Where did you get that information that Christian Guerrero was the person that was claiming that [Rocha's] the driver?" Gomez replied that a fire supervisor "out there on scene was able to provide . . . that information." Gomez did not know if the person supervised Guerrero specifically, but the supervisor was "in charge" and knew Guerrero. The prosecutor then asked: "So you spoke to a fire supervisor, and they told you Christian Guerrero is the individual that you need to talk to because he's the one who witnessed—that places the defendant behind the wheel of the vehicle?" Defense counsel objected that the question was leading, and the court overruled the objection. The court then instructed the jury that "what Officer Gomez was told" was admitted into evidence for a limited purpose, namely, to "explain[] the officer's conduct." But the jury could not consider the information "for the truth of the matter asserted."[1]

---

[1] In full, the court instructed: "Ladies and gentlemen of the jury, what Officer Gomez did and what he said is relevant based on the testimony so far. He's allowed to rely on what he's told in requesting a warrant be issued. The propriety or the validity or the correctness of the warrant is not at issue in this case. The warrant was valid and is valid. [¶] In terms of the information he received, it's not received for the truth of the matter asserted because it's hearsay. But it's an issue to explain what the officer did and why he did it. It's been received for that limited purpose. Does everybody understand what I've said? [¶] I got a few not-so-confident head nods. [¶] It's not received for the truth. It explains what Officer Gomez did. And the decision about whether or not the defendant is guilty is for this jury, based on evidence that's received. [¶] In terms of what Officer Gomez was told, that's not before you as evidence on the charge. It explains the officer's conduct. The jury cannot consider it for purposes of determining whether the defendant is guilty or not of the charged offenses."

*[footnote continued on next page]*

After the court's limiting instruction, Gomez did not answer the pending question, because the prosecutor asked a different question. Gomez said that he was given Guerrero's name and phone number, and he spoke to Guerrero. "[A]ll the information [was] confirmed" after speaking with Guerrero.

After the court excused the jury for the day, the court summarized the unreported sidebar conference: "We did have a discussion in the back about the scope of the Redirect after the Cross-Examination by [defense counsel] regarding the check box indicating that a witness statement was obtained. And what the Court ruled in the back, without the reporter, outside the presence of the jury, was that the prosecutor could ask Officer Gomez what was the source of the information for the checked box and that we will then take it question by question in terms of further objections. Obviously, what transpired in the courtroom is on the record." The court asked whether the parties had anything further, and they replied that they did not.

The jurors found Rocha guilty on two counts of driving under the influence of alcohol and two counts of driving with a blood alcohol content of 0.08 percent or higher. The court sentenced Rocha to a total of three years eight months in prison.

---

In addition, after the close of evidence, the court instructed the jury with CALCRIM No. 303, stating: "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other."

DISCUSSION

Rocha argues that the trial court violated his Sixth Amendment right of confrontation by admitting evidence of the fire supervisor's statement to Gomez. According to Gomez, the fire supervisor said that Guerrero claimed to have seen Rocha in the driver's seat of the Audi. Rocha contends that the fire supervisor's statement was testimonial and that Rocha did not have an opportunity to cross-examine the fire supervisor. The argument lacks merit.

As a threshold matter, the People argue that Rocha forfeited any confrontation clause or hearsay argument because he failed to object on those grounds in the trial court. (*People v. Waidla* (2000) 22 Cal.4th 690, 717 [arguments relating to the admissibility of evidence are forfeited "'"in the absence of a specific and timely objection in the trial court"'"].) Rocha asserts that the court's limiting instruction after the unreported sidebar conference shows that the hearsay issue was brought to the court's attention, and further objections after that instruction would have been futile. It is possible that Rocha raised a hearsay or confrontation clause objection during the unreported conference, although the court's summary of the conference did not specify whether that was the case. We need not decide whether Rocha forfeited the confrontation clause argument. Regardless, the court did not violate Rocha's right of confrontation.

The Sixth Amendment's confrontation clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." (U.S. Const. amend. VI.) Hearsay is evidence of an out-of-court statement

"offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) The confrontation clause operates as a general bar against the admission of testimonial hearsay unless "the declarant is unavailable, and . . . the defendant has had a prior opportunity to cross-examine." (*Crawford v. Washington* (2004) 541 U.S. 36, 59.) But the confrontation clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." (*Id.* at p. 59, fn. 9.) Accordingly, the court's admission of such statements for a nonhearsay purpose does not violate the confrontation clause. (*People v. Ledesma* (2006) 39 Cal.4th 641, 707, fn. 18.)

"[A]n out-of-court statement can be admitted for the nonhearsay purpose of showing that it imparted certain information to the hearer, and that the hearer, believing such information to be true, acted in conformity with such belief. [Citations.] The nonhearsay purpose must also be relevant to an issue in dispute." (*People v. Montes* (2014) 58 Cal.4th 809, 863.) We review the trial court's ruling on the admissibility of evidence for abuse of discretion, and we apply de novo review to "the legal question whether admission of the evidence was constitutional" under the confrontation clause. (*People v. Mayo* (2006) 140 Cal.App.4th 535, 553.)

The court did not violate Rocha's right of confrontation by admitting evidence of the fire supervisor's out-of-court statement to Gomez. The court admitted evidence of the statement for a nonhearsay purpose, namely, to explain Gomez's actions. Rocha put Gomez's conduct at issue: Defense counsel elicited testimony on cross-examination that Gomez had checked the box on his affidavit indicating that a witness saw Rocha behind

the wheel. The defense also elicited testimony that Gomez had not spoken to that witness, Guerrero, until the next day. The obvious purpose of that line of questioning was to show that Gomez had perjured himself and to discredit the officer. Accordingly, the evidence of the fire supervisor's statement—that Guerrero claimed to have seen Rocha behind the wheel—was relevant to show why Gomez would have checked the box indicating that there was a witness. Moreover, that evidence was relevant to rehabilitating Gomez's credibility after Rocha had impeached it. (Evid. Code, § 210 [relevant evidence includes evidence bearing on a witness's credibility].) Because the court properly admitted the fire supervisor's statement for that nonhearsay purpose, there was no confrontation clause violation.

Rocha argues that the state of mind exception to the hearsay rule (Evid. Code, § 1250) was inapplicable. The exception applies to "evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation." (§ 1250, subd. (a).) But the court did not admit the evidence under that exception to the hearsay rule, and correctly so—the fire supervisor was the declarant, and his state of mind was not at issue. Rather, the court admitted the evidence for the nonhearsay purpose of showing its effect on the hearer. (*People v. Montes*, *supra*, 58 Cal.4th at p. 863.)

Rocha also argues that "[w]hat Officer Gomez did and why was not relevant." He asserts that the court recognized that Gomez's actions were irrelevant when the court instructed the jury that the validity of the warrant was not at issue. It is true that the jury did not have to decide whether the blood draw warrant was valid. But it does not follow

9

that Gomez's actions in connection with the warrant application were irrelevant.  Rocha relied on Gomez's actions in connection with the warrant to suggest that Gomez committed perjury and was not credible, rendering Gomez's actions relevant.

Rocha lastly argues that the court's limiting instruction was "ineffective."  He relies on *People v. Sanchez* (2016) 63 Cal.4th 665, in which our Supreme Court concluded that "[w]hen an expert relies on hearsay to provide case-specific facts, considers the statements as true, and relates them to the jury as a reliable basis for the expert's opinion, it cannot logically be asserted that the hearsay content is not offered for its truth."  (*Id.* at p. 682.)  Under those circumstances, "the jury must consider expert basis testimony for its truth in order to evaluate the expert's opinion," so "hearsay and confrontation problems cannot be avoided by giving a limiting instruction that such testimony should not be considered for its truth."  (*Id.* at p. 684.)  But *Sanchez* does not apply to the challenged testimony.  Gomez was not offering an expert opinion when he testified regarding the fire supervisor's out-of-court statement, and the jury did not have to consider the truth of the fire supervisor's statement in order to evaluate Gomez's testimony.  Even if the fire supervisor's statement was not true, Gomez's having heard the statement still explains why Gomez checked the box on his affidavit.

For all of these reasons, we conclude that the court did not violate Rocha's Sixth Amendment right of confrontation.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ        
J.

We concur:

MILLER       
      Acting P. J.

CODRINGTON      
      J.